UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Federal Mogul Corporation,

      Plaintiff,

v.

Insurance Company of the State of
Pennsylvania,

      Defendant.

_____/

Case No. 12-12005

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [20] AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [31]**

In this insurance policy breach of contract and declaratory action case, Plaintiff
Federal Mogul Corporation seeks to recover additional amounts as set forth in an
insurance policy that Defendant Insurance Company of the State of Pennsylvania issued,
in part, to insure Plaintiff's facility in Thailand against flooding damage.  In October, 2011,
a flood caused substantial damage to Plaintiff's facility.  Plaintiff alleges the damages are
in excess of $88 million.  Plaintiff filed a claim with Defendant under the policy.  Defendant
paid Plaintiff $30 million, stating that a "High Hazard Zone" flood provision in the policy
limited the amount Defendant owed.  Plaintiff disputed that the High Hazard provision
applied and filed this declaratory action suit, seeking coverage under the policy's $200
million annual aggregate flood liability portion of the policy.

The parties have each filed a motion for summary judgment.  Both argue that the
policy is unambiguous and supports each of their opinions.  Because the Court finds that

Defendant bears the burden to show that Plaintiff's facility appeared on a 100-year floodplain at the time of the flood, and that Defendant has not met that burden, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment.

**I.    Facts**

On December 1, 2010, Plaintiff and Defendant entered into an insurance policy.  (Dkt. 1, Ex. A.)  The policy states that it was in effect from December 1, 2010 until December 1, 2011.  (*Id.*)  The policy covered Plaintiff's facility at 1/89 Rojana Industrial Park, Moo 5, Rojana Road, Tambon, Ayutthaya, Thailand 13120.  In October, 2011, a flood caused significant damages to Plaintiff's facility.  (Pl.'s Mot. for Summ. J., Ex. A.)

The policy covered loss due to a flood at the facility.  The policy provided:

Limits of Liability

The Company shall not be liable under this "policy" for more than its proportion of $200,000,000 for all loss or damage arising out of one "occurrence" regardless of the number of "locations" or coverages involved in the "occurrence", except as more specifically limited below:

Policy at 4.  The policy delineates circumstances in which Plaintiff would be entitled to different monetary amounts:

| | |
|---|---|
| $200,000,000 | Flood Aggregate Limit of Liability for all locations combined in any one policy year, except: |
| $70,000,000 | Flood for Moderate Hazard Zones (Annual Aggregate); |
| $30,000,000 | Flood for High Hazard Zones (Annual Aggregate)[.] |

Policy at 5.  The policy defines High and Moderate Hazard Zones:

2

2) High Hazard Zones for Flood

   a) all property at a "location" that is partially or totally situated in an area which at the time of loss or damage has been designated on a Flood Insurance Rate Map (FIRM) to be a Special Flood Hazard Area (SFHA), and/or

   b) all property in areas where the National Flood Insurance Program (NFIP) is not in effect, and where all property at a "location" is partially or totally situated in an area which is within a 100 year flood plain or its worldwide equivalent, and/or

   c) all property at a "location that is partially or totally protected by dams, dikes, levees or walls which were intended to protect such property from the level of a 100 year flood or its worldwide equivalent, regardless of any Zone or Area designation or assignment by the Federal Insurance and Mitigation Administration (FIMA) or other recognized authority having jurisdiction

3) Moderate Hazard Zones for Flood:

   a) all property at a "location" that is partially or totally situated in an area which at the time of loss or damage has been designated on a Flood Insurance Rate Map (FIRM) as Zone B or X-shaded but is not in a Special Flood Hazard Area (SFHA), and/or

   b) all property in areas where the National Flood Insurance Program (NFIP) is not in effect, and where all property at a "location" is situated in an area which is outside of a 100 year flood plain or its worldwide

3

equivalent, but partially or totally within a 500 year flood plain or its worldwide equivalent.

Policy at 14-15.

After the October, 2011 flood, Plaintiff filed a claim with Defendant. Defendant paid $30 million to Plaintiff, relying upon the High Hazard provision in the policy. Plaintiff disputed the applicability of the High Hazard provision, arguing that it was entitled to the $200 million coverage amount.

On February 27, 2012, Defendant, through a third party, acknowledged Plaintiff's claim and stated that Defendant was investigating the claim. (Dkt. 1, Ex. B.)   On March 21, 2012, Defendant responded to one of Plaintiff's letters. (Dkt. 1, Ex. D.)  In this letter, Defendant informed Plaintiff that the reason it paid $30 million was because Plaintiff's facility "was protected by dams, dikes, levees and walls which were intended to protect the area and the location of the Loss from the level of a 100-year flood or its worldwide equivalent." (*Id.*) Defendant reasoned that the site had "experienced repeated and serious flooding throughout the years." (*Id.*)  Defendant then conclusorily stated, "[i]t is our understanding that the area's flood history, coupled with the presence of the aforementioned water control systems, qualifies to categorize the location of the Loss as a High Hazard Zone for flooding with a sublimit (annual aggregate) of $30,000,000." (*Id.*)

On May 3, 2012, Plaintiff filed this suit.  (Dkt. 1.)

## II.   Rule 56 summary judgment standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

4

*U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.   Analysis

### A.  Introduction

The parties first dispute whether the High Hazard provision is an exception/exclusion to coverage, a sublimit, or part of the coverage.  If the High Hazard provision is an exception or sublimit, then Defendant has the burden to prove that Plaintiff's claim does not fall within the $200 flood aggregate limit.  If the High Hazard Zone provision is a part of the coverage, then Plaintiff bears the burden to prove that its claim falls outside of the High Hazard provision.

The Court finds that, given the policy's language and Michigan law, the High Hazard provision is an exclusion/exception, so Defendant has the burden of establishing the exclusion's applicability.

The parties then ask the Court to resolve their rights and entitlements under the policy, namely–is Plaintiff entitled to $30 million or is Plaintiff entitled to assert claims up to the $200 million limit, or, as it has asserted, around $88 million. Both parties argue that the policy is unambiguous. The Court agrees that the policy is unambiguous. The Court finds that, given the parties' arguments and reading the policy in its entirety, the policy unambiguously requires that a predetermined 100-year floodplain must have existed at the time of the flood. The parties agree that neither Thailand, nor any country or governmental/private body, had determined that Plaintiff's facility was in a 100-year floodplain before the flood.[1]

### B.  Michigan general insurance contract interpretation law

A court interprets an insurance contract the way it interprets any other contract–it "must construe and apply unambiguous contract provisions as written." *Pioneer States Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 262 (Mich.Ct.App. 2013) (citation omitted). A court therefore gives words used in a contract their "plain and ordinary meaning"–the meaning "that would be apparent to a reader of the instrument." *Id.* (citation omitted). A court, though, "cannot hold an insurance company liable for a risk that it did not assume." *Id.* (citation omitted). As with other contracts, if an insurance contract is capable of two interpretations, the contract is ambiguous. *Id.* (citation omitted). If the contract is ambiguous, the court construes the contract in the insured's favor. *Id.* at 263 (citation omitted). But a court may not perfect a word or phrase or give a word or phrase an alien construction "merely for the purpose of benefitting an insured." *Id.* (citation omitted).

---

[1]Defendants alternatively argue that the Moderate Hazard provision applies; all of the analysis below applies to that argument as well.

**C.  An insurer bears the burden to prove an exception, exclusion, or limitation**

The insured has the burden of proof to show that a policy covers the damage suffered.  *Pioneer States Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 263 (Mich.Ct.App. 2013).  The insurer, though, has the burden to prove than an exclusion to coverage applies.  *Id.* (citation omitted).  While a court is to strictly construe exclusions in the insured's favor, a court must also "read the insurance contract as a whole to effectuate the intent of the parties and enforce clear and specific exclusions."  *Id.* (citations omitted).

The insurer's burden, explained more broadly:

> If a risk is excepted by the terms of a policy which insures against other perils or hazards, loss from such a risk constitutes a defense which the insurer may urge, since it has not assumed that risk, and from this it follows, at least as a general rule, that an insurer seeking to defeat a claim because of an exception or limitation in the policy has the burden of proving that the loss, or a part thereof, comes within the purview of the exception or limitation set up.  In other words, the principle generally applied by the courts is that if proof  is made of a loss apparently within a contract of insurance, the burden is upon the insurer to prove that the loss arose from a cause of loss which is excepted or for which it is not liable, or from a cause which limits its liability.

*Morrill I v. Gallagher*, 122 N.W.2d 687 (Mich. 1963) (affirming approval of this rule, citation omitted).  Put simply and generally, the insurer bears the burden to show exclusions, exceptions, and limitations of liability: "[a]s a general rule, limitations of liability and loss from an excepted cause [] are matters of defense to be specially pleaded by the insurer."  *Roddis Lumber & Veneer Co. v. American Alliance Ins. Co.*, 47 N.W.2d 23, 26 (Mich. 1951) (citation omitted) (affirming the trial court's holding that the insurer bears the burden of proof to show that a covered loss comes under an exclusion clause of the insurance policy.").  "It is generally held that the burden is on the insurer to show that damages claimed fall within an exception of loss[.]" *Id.* (citation omitted).

7

### 1. The High Hazard Zone flood provision is an exception, for which Defendant has the burden to prove that Plaintiff's claim falls within

Here, the High Hazard Zone flood provision is an exception.   The policy's language requires this holding.  As shown above, the policy contains the following language:

| $200,000,000 | Flood Aggregate Limit of Liability for all locations combined in any one policy year, except: |
| --- | --- |
| $70,000,000 | Flood for Moderate Hazard Zones (Annual Aggregate); |
| $30,000,000 | Flood for High Hazard Zones (Annual Aggregate)[.] |

The High Hazard Zone flood limit is expressly excepted from the $200 million flood aggregate limit.  The "except" creates the exclusion.

### 2. The parties' arguments and cases about burden

Defendant characterizes the High Hazard provision as part of the policy's coverage, and offers cases in support of that characterization.  Plaintiff argues that the High Hazard provision is an exclusion, and also offers cases in supports of its characterization.

The Court addresses several of the parties' cases.

Defendant argues that  *Atifah v. Union Sec. Ins., Co.*, 694 F.Supp.2d 668 (E.D.Mich. 2010) (Battani, J.) is "directly on point."  (Def.'s Mot. at 7-8.)  In *Atifah*, the plaintiff filed suit to recover accidental death benefits for his mother's death under the defendant's policy. 694 F.Supp.2d at 669.  The policy provided a $50,000.00 benefit for accidental death, a $100,000.00 benefit for a death in a motor vehicle accident, and a $1 million benefit for death in a licensed common carrier.  *Id*.  The defendant paid $100,000.00 and the plaintiff filed suit, claiming that he was entitled to the $ 1 million benefit because his mother's death fell under the common carrier coverage.  *Id*. at 670.

8

There, the "common carrier coverage provision" read: "[t]he policy provides benefits for a Covered Person if he suffers a loss or is injured while occupying, as a fare-paying passenger, a public conveyance provided and operated by a duly licensed common carrier for a regular passenger service by land, water, or air." *Atifah*, 694 F.Supp.2d at 791.

The court first addressed whether the policy's common carrier provision was ambiguous. *Atifah*, 694 F.Supp.2d at 671-72. The court held that the provision was not ambiguous and then stated that "the plain terms of the policy require [the plaintiff] to show that his decedent was traveling by a common carrier duly licensed to provide regularly scheduled service at the time of her death." *Id.* at 672.

The Court fails to see how *Atifah* is "directly on point." The court did not include the policy's exact language in that case. So parsing that policy is not possible. The court there also made the finding that the plaintiff bore the burden to show that the incident fell within the certain coverage. There, it appears that the coverage was divided into three distinct categories of accidents, each with a different benefit amount. Those three distinct coverage areas were (1) accidental death, (2) death in a motor vehicle accident, and (3) death in a licensed common carrier.

Here, the policy and facts are different. The difference is one of scope–on the micro level, Defendant's argument has some appeal–for there are different categories under the flood coverage; but on the macro level, the relevant policy section provides coverage for floods alone. The flood coverage, though, is limited based on the geographical location of the flood. *Atifah* dealt with accidental death benefits and delineated coverage areas for the means of the death. Here, the policy covers more than just floods. The policy broadly covers all types of coverage, such as earth movement, automatic, and flood coverage, to

9

name just a few.  These categories, these coverages, are what are analogous to the coverages in *Atifah*.  Plaintiff bears the burden to show that its loss falls within the broad coverage area.[2]

Defendant also points to *Smith v. American Family Life Assurance Co. of Columbus*, 584 F.3d 212 (5th Cir. 2009).  In *Smith*, the plaintiff's husband died in a helicopter crash and she sought benefits from an insurance policy that the defendant issued.  584 F.3d at 213.  The policy delineated coverage; $150,000.00 for a "Common-Carrier Accident" and $40,000.00 for an "Other Accident."  *Id.*  For coverage under the common-carrier provision, the plaintiff had to prove that the helicopter that her husband perished in transported people in a "regularly scheduled" manner.  *Id.* at 217.  The Fifth Circuit held that the plaintiff failed to prove that she was entitled to coverage because she did not submit evidence that the helicopter transported people in a "regularly scheduled" manner.  *Id.*  The court expressly noted that the plaintiff "bore the burden of establishing coverage under her policy."  *Id.* at 220.

Plaintiff argues that *Smith* does not help Defendant's position.  (Pl.'s Resp. at 11.)  The Court agrees with Plaintiff.  Plaintiff has submitted the *Smith* policy.  That policy contains a list of benefits to which an insured may be entitled.  That list is a list of benefits, that is, types of coverage, that a plaintiff must prove.  Analogizing *Smith* to this case, the list of benefits is similar to the various broad categories of coverage–Flood, Earth Movement, etc., here.  *Smith* therefore does not help Defendant persuade the Court that Plaintiff bears the burden to establish the exception to the general flood coverage.  The

---

[2]Neither party argues that Plaintiff did not experience a flood that caused damage that would fall under the policy's coverage.

Court further notes that the *Smith* policy does not contain the word "except," as the flood coverage here does.   That "except," the Court finds, takes away from *Smith*'s persuasiveness.

The parties also dispute the relevance of *Zurich American Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158 (2d Cir. 2005).

Defendant states that *Zurich* stands for the proposition that "limits of liability define the scope of coverage and are not an exclusion upon which the insurer bears the burden of proof."  (Def.'s Mot. at 10.)  Plaintiff contests Defendant's interpretation, arguing that *Zurich* does stand for Plaintiff's broad interpretation.  (Pl.'s Resp. at 12.)  Plaintiff also offers a more recent Second Circuit case to support its position, *MBIA, Inc. v. Federal Insurance Co.*, 652 F.3d 152 (2d Cir. 2011).  (*Id.* at 12-13.)  The Court agrees with Plaintiff. The Court does not recite the facts of either opinion, for neither set of facts is particularly helpful.

In *Zurich*, the court positioned its burden argument around a "per-occurrence" limitation.  397 F.3d at 172.  The court held that, "per-occurrence limitations define the scope of coverage and are not policy exclusions."  *Id.*  In its case, the Second Circuit also pointed out that, because the plaintiff insurer asserted a one-occurrence theory with the sublimit of $10 million, the defendant insured bore the burden to prove that the sublimit did not apply.  *Id.*

Here, a per-occurrence theory is not at issue, that provision alone takes *Zurich* out of a persuasive position.

11

The parties dispute the holding and relevance of *MBIA, Inc. v. Federal Insurance Co.*, 652 F.3d 152, 165 (2d Cir. 2011).   A full recitation of *MBIA*'s facts is unnecessary.   There, a policy had a sublimit and the insurer refused to pay above the sublimit.   The court held that, because the insurer was denying coverage based on the sublimit, the sublimit operated as an exclusion, which the insurer had to prove.   *MBIA*, 652 F.3d at 165.

The Court agrees with Plaintiff, *MBIA* is analogous; here, as in *MBIA*, the insurer is relying on a exclusion/exclusion/sublimit to exclude certain payment.   Defendant bears the burden.

### D.   Section 2(b) of the High Hazard provision requires a predetermined 100-year floodplain and Defendant has not proven that the High Hazard provision applies

Both parties agree that the High Hazard provision, section 2(b), governs the case. The parties disagree what that section means, though.   Plaintiff argues that the Court should look to 2(a) to interpret 2(b) and find that Plaintiff's facility must have appeared on a pre-loss, pre-determined 100-year floodplain. (Pl.'s Mot. at 10-11.) Defendant advocates reading the provision as only requiring that Plaintiff's facility be in an area/location that has a one percent chance of flooding in any given year (that is, in a 100-year floodplain), but that has not be designated as so by any government or authority or on any official map. Defendant then offers expert testimony that Plaintiff's facility is currently in a 100-year floodplain.

The relevant section:

2)  High Hazard Zones for Flood

a) all property at a "location" that is partially or totally situated in an area which at the time of loss or damage has been designated on a Flood Insurance Rate Map (FIRM) to be a Special Flood Hazard Area (SFHA), and/or

b) all property in areas where the National Flood Insurance Program (NFIP) is not in effect, and where all property at a "location" is partially or totally situated in an area which is within a 100 year flood plain or its worldwide equivalent, and/or

c) all property at a "location that is partially or totally protected by dams, dikes, levees or walls which were intended to protect such property from the level of a 100 year flood or its worldwide equivalent, regardless of any Zone or Area designation or assignment by the Federal Insurance and Mitigation Administration (FIMA) or other recognized authority having jurisdiction.[3]

The parties ask the Court what 2(b) means.  The Court finds that, to determine what 2(b) means, it must read 2(b) in the context of 2(a) and 2(c). *See Pearson v. Provident Life & Accident Ins. Co.*, 204889, 1999 WL 33455091, at *5 (Mich.Ct.App. Jan. 22, 1999) (citation omitted) ("[A]n insurance contract, as with any other contract, must still be viewed as a whole, its provision read to give meaning to each, and conflicts between provisions reasonably harmonized.")*, and Hagerl v. Auto Club Grp. Ins. Co.*, 403 N.W. 2d 197,199 (Mich.Ct.App. 1987) ("When interpreting an insurance policy, one provision should not be singled out, but the contract should be read as a whole."), *and Allstate Ins. Co., Inc. v.*

---

[3]A Flood Insurance Rate Map (FIRM) is "[t]he official map of a community on which the U.S. Federal Insurance and Mitigation Administration (FIMA) has designated the special hazards areas applicable to the community[.]"  "Area of special flood hazard is the land in the flood plain within a community subject to a 1 percent or greater chance of flooding in any given year."  44 C.F.R. § 59.1.

*King*, 815 F.Supp. 1071, 1073 (W.D.Mich. 1993) (stating that a court must read an insurance policy's provisions "in tandem with" subsequent exclusion sections.).

Here, reading the High Hazard provision in its entirety, the Court finds that the provision, and each of its individual subsections, is unambiguous.  Section 2(a) requires a flooded property to be at a location that has been designated on a FIRM to be in a SFHA.  The parties agree that this provision only applies in the United States, where the U.S. Federal Insurance and Mitigation Administration designates properties as in SFHAs.  The parties also agree that this provision does not apply.

Moving to 2(b), as stated previously, the parties state that this section applies to the controversy, since Plaintiff's facility is outside of the United States–"where the National Flood Insurance Program (NFIP) is not in effect."  The parties dispute the meaning of the next clause, "where all property at a 'location' is partially or totally situated in an area which is within a 100 year flood plain or its worldwide equivalent."

The Court finds that this section parallels 2(a), save for the fact that 2(b) applies outside of the United States.  The Court therefore finds that, as Plaintiff partially argues, 2(b) requires a predetermined 100-year floodplain to have existed on some sort of map, akin to a FIRM. Here, there must be some sort of construct in which the facility is designated as located on a 100-year floodplain or some construct that shows that the facility has a one percent chance of flooding in a year.  With this interpretation, the Court does not render the policy unreasonable. As Plaintiff has shown, constructs equivalent to FIRMs exist in Europe and Canada.  (Pl.'s Mot. at 22.)  These other constructs are what 2(b) contemplates.

14

Section 2(c) strengthens the Court's interpretation of 2(b).  Section 2(c) completes the High Hazard Zone for floods–it operates as a 'catch-all' section.   Section 2(a) covers properties in the United States where 100-year flood plains have been identified, in the form of a FIRM.  Section 2(b) covers properties outside the United States where 100-year flood plains or equivalent constructs have been identified.  Section 2(c) fills in the gaps, it applies to locations that have taken precautions against flooding that would be typical of 100-year floodplains: "partially or totally protected by dams, dikes, levees or walls which were intended to protect such property from the level of a 100 year flood or its worldwide equivalent[.]" Section 2(c),as it ambiguously states, applies to locations regardless of any "designation or assignment" by any "recognized authority having jurisdiction."

Defendant argues that 2(c) applies inside and outside of the United States and regardless of whether there is a predetermined floodplain.  (Def.'s Resp. at 10-11.)  The Court agrees with Defendant, somewhat.  But the Court finds that there is no purpose to 2(c) the way Defendant reads 2(c) to apply to 2(a) or 2(b).  If a location or area falls within 2(a) or 2(b) there is no need to look to 2(c). The only time 2(c) would be relevant would be in a situation in which, inside the United States, an area or location has not yet been designated by an entity as being on a FIRM, but is protected by the dams and levees that would be in place to protect an area from a one-hundred year flood risk.  The same is true for areas outside of the United States.  Section 2(c) only applies when a location or area outside of the United States is not designated on a predetermined floodplain, but is protected by the structures that would protect an area or location from a one-hundred year flood.

Reading the three subsections together, the section's purpose comes through–the section identifies a means for the parties to manage their expectations and allocate risk through the policy.   High Hazard Zones occur in those areas that have previously experienced floods, floods from which an entity can determine that the area had a one percent chance of flooding in any given year and therefore is within a 100-year floodplain.  These are the areas in which Defendant would anticipate a flood to occur, and for which it assumed, and Plaintiff could expect, only a $30 million benefit if a flood occurred.

The policy is clear and Defendant has not shown that the High Hazard provision applies.  Defendant incorrectly interprets 2(b) and fails to show that 2(c) applies.

The Court notes Defendant's argument that the facility just has to be 'in' a floodplain, which, Defendant argues, it is, and that there is no timing requirement as to when Defendant has the ability to show that the facility is located in a floodplain.  Defendant points out that 2(a) has the phrase "at the time of loss or damage" and argues that there is no timing requirement in 2(b), and therefore that that absence must mean something. Defendant suggests that the absence suggests that it can create a post-loss floodplain, using the 2011 flood in its creation.  The Court rejects that suggestion.  As Plaintiff points out, a party's rights under an insurance policy are fixed when the loss occurs.  *See Certain Underwriters of Lloyds, London v. U.S. Indus. Serv., LLC*, 825 F.Supp.2d 882, 889 (E.D.Mich. 2011) (Lawson, J.)  ("As a general rule, the right of parties to insurance proceeds is fixed at the time of the loss.") *and Sietsema v. Fremont Mut. Ins. Co.*, 196 N.W.2d 841, 843 (Mich.Ct.App. 1972) (affirming the trial court's holding that "the rights of the parties were fixed at the time of the loss.").  Defendant's suggestion would render the policy unreasonable and contrary to insurance principles.  An insurance policy manages

16

the parties' expectations of future loss.  Here, the parties did so, by providing for a High Hazard exclusion.  Only when a flood occurs in a High Hazard zone, as defined by the provision, does the Court honor the parties' intentions and the policy.  Allowing Defendant to attempt to re-write the policy and readjust the parties' prior expectations is contrary to contract and insurance principles.  The Court understands Defendant's position and why Defendant went to the expense to create a post-loss floodplain, for the expense to create a floodplain must be significantly lower than the amount over $30 million that Plaintiff is claiming.  But the Court cannot sanction such an action that is contrary to the policy. Defendant did not anticipate the High Hazard loophole into which Thailand appears to have gone through.[4]

Because a flood damaged Plaintiff's property and Defendant has not shown that the case's circumstances fall within an exclusion, the Court finds that Plaintiff is entitled to assert claims above the $30 million High Hazard exclusion.[5]

## IV.  Conclusion

---

[4] "'Although an insurer is under no duty to specify ever conceivable fact situation where coverage will not be provided," the method used should avoid ambiguity.'" *Ososki v. St. Paul Surplus Lines*, 156 F.Supp.2d 669, 674 (E.D.Mich. 2001) (Lawson, J.) (citation omitted).  "To determine whether an insurance policy covers a particular act, the [c]ourt must decide if the occurrence section of the policy includes the particular act, and if so, whether the exclusion section of the policy denies coverage in that case."  *Id.* (citation omitted).

[5] Defendants argue that the Moderate Hazard provision shines light on the High Hazard provision.  The Court notes the differences between the High and Moderate Hazard provision, e.g., the lack of the catch-all provision.  But the Court does not find that that difference changes the Court's interpretation of the High Hazard provision.  The policy is about risk expectation–the policy shows that the parties expected less risk in a Moderate Hazard zone and therefore found a catch-all provision impractical.  The policy is unambiguous and the Court enforces it so.

Because the Court finds that Defendant bears the burden of establishing that the High Hazard provision limits Plaintiff's recovery, that the policy is unambiguous and requires that Defendant demonstrate that Plaintiff's facility appeared on some sort of 'formal' pre-existing 100-year floodplain, and that Defendant did not make that demonstration, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment.  Given that the Court grants Plaintiff's motion and did not rely on any expert testimony or outside evidence, the Court finds that all the pending motions to strike are rendered moot.  Plaintiff is entitled to assert claims over the $30 million limit.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 10, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 10, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol A. Hemeyer