UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Federal-Mogul Corporation,

    Plaintiff,

v.

Insurance Company of the State of Pennsylvania,

    Defendant.
_____/

Case No. 12-12005

Honorable Nancy G. Edmunds

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [90] AND DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT [96]

This matter comes before the Court on the parties' cross-motions for partial summary judgment on Plaintiff's "time element loss" claim. In October 2011, a flood caused substantial damage to Plaintiff Federal-Mogul Corporation's facility in Thailand. At the time of the flood, Plaintiff was insured by a policy purchased from Defendant Insurance Company of the State of Pennsylvania. The parties stipulate that Plaintiff suffered a loss of $64,500,000, which included $39,406,467 of property damage and $25,093,533 of "time element loss" (*i.e.*, economic loss due to an inability to operate normally). Plaintiff submitted a claim for losses caused by the 2011 flood. Defendant paid Plaintiff $30 million, stating that a High Hazard flood zone provision in the policy limited the amount Defendant owed.

Plaintiff argues that even if the facility is located in a High Hazard zone (which it disputes), the High Hazard sublimit applies only to physical loss or damage caused by

the flood, and not to time element loss. Thus, Plaintiff argues it is entitled to judgment on its time element loss claim for $25,093,533. Defendant argues it is entitled to judgment as a matter of law finding that the High Hazard sublimit applies to all loss caused by flood—including time element loss.

Because the Court finds that Defendant bears the burden to show that the High Hazard sublimit applies to time element loss, and that Defendant has not met that burden, the Court GRANTS Plaintiff's motion for partial summary judgment on its time element loss claim for $25,093,533 and DENIES Defendant's cross-motion for partial summary judgment.

**I. Facts**

On December 1, 2010, the parties entered into an insurance policy. (Dkt. 1, Ex. A). The policy, in effect from December 1, 2010 until December 1, 2011, covers Plaintiff's facility at 1/89 Rojana Industrial Park, Moo 5, Rojana Road, Tambon, Ayutthaya, Thailand 13120. The policy covers loss due to flood. In October 2011, a flood caused substantial damage to Plaintiff's facility in Thailand. The parties stipulate that Plaintiff suffered a loss of $64,500,000, which included $39,406,467 in property damage and $25,093,533 in time element loss. (Dkt. 77, at 2).

Both property damage and time element loss caused by flood are covered by the Policy. Section B, entitled "Property Damage," provides, "[t]his 'policy' covers direct physical loss or damage caused by or resulting from Flood." (Dkt. 1, Ex. A, at 21). Section C of the policy states, "[t]his 'policy' insures TIME ELEMENT loss ... directly resulting from direct physical loss or damage of the type insured by this 'policy.'" (*Id.* at 47). Time element coverages include: gross earnings, gross profit, extra expense,

2

leasehold interest, rental insurance, and commissions, profits and royalties. (*Id.* at 47-53). Certain additional time element extensions are also listed (*e.g.*, contingent time element (loss at locations of direct suppliers or customers) and service interruption time element (loss caused by the interruption of incoming services such as electricity or gas)). (*Id.* at 53-59).

Section A sets forth limits and sublimits of liability. First, the Policy sets forth a blanket per-occurrence limit: "The Company shall not be liable under this 'policy' for more than its proportion of **$200,000,000** for all loss or damage arising out of one 'occurrence' regardless of the number of 'locations' or coverages involved in the 'occurrence.'" (*Id.* at 11). This blanket limitation is "more specifically limited" by a list of 67 limits and sublimits. The flood-related limit and sublimits are:

| | |
|---|---|
| **$200,000,000** | Flood Aggregate Limit of Liability for all locations combined in any one policy year, except: |
| $70,000,000 | Flood for Moderate Hazard Zones (Annual Aggregate); |
| $30,000,000 | Flood for High Hazard Zones (Annual Aggregate); |
| $5,000,000 | Flood as respects Errors and Omissions; Contingent Time Element Course of Construction; Service Interruption Property Damage and Time Element combined; Exhibitions, Expositions Fairs or Trade Shows, and Miscellaneous Unnamed Locations (separate Annual Aggregate); and |
| $5,000,000 | Flood as respects Automatic Coverage (Annual Aggregate) |

(*Id.* at 12). As shown above, the "Flood Aggregate Limit of Liability" provides a general $200 million limit per policy year. This $200 million limit is excepted by four sublimit amounts, including the High Hazard sublimit of $30 million.

After the 2011 flood, Plaintiff submitted a claim with Defendant under the policy. (Dkt. 96, at 2). Defendant paid Plaintiff $30 million, stating that the High Hazard sublimit limited the amount Defendant owed. (*Id.* at 3). On May 3, 2012, Plaintiff filed this declaratory action suit, claiming the High Hazard sublimit does not apply, and alternatively, even if the High Hazard provision applies, it applies only to physical loss or damage caused by flood ($39 million), not time element loss ($25 million). (Dkt. 1).

The Court previously granted summary judgment for Plaintiff, finding Defendant had not met its burden to show that Plaintiff's facility appeared on a 100-year floodplain. (Dkt. 63). The Sixth Circuit subsequently reversed, holding that a 100-year floodplain can exist absent identification on a regulatory map. (Dkt. 84). The appellate court did not decide whether Defendant had demonstrated that the facility at issue was on a 100-year floodplain, and noted such was a question of fact. Deferring that question, the parties now bring cross motions for partial summary judgment on the time element loss claim. Plaintiff seeks judgment on its time element loss claim for $25,093,533, while Defendant seeks a finding as a matter of law that the High Hazard sublimit applies to both property damage loss and time element loss.

## II. Summary Judgment

Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321,

326-27 (6th Cir. 2013). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). When reviewing the record, all evidence and reasonable inferences must be construed by the Court in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the parties have filed cross-motions for summary judgment, this standard does not change. That is, the Court must evaluate each motion "on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. U.S.*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. Analysis

#### A. Insurance Policy Interpretation

##### 1. General Interpretation Rules

Insurance policies are interpreted under ordinary principles of contract construction. *Henderson v. State Farm Fire and Casualty Co.*, 596 N.W.2d 190, 193 (Mich. 1999). Here, the Court interprets the language of the insurance policy and its terms in accordance with Michigan's well-established principles of contract construction. The primary function of the Court is to give effect to the parties' intent as discerned from the policy's language, looking at the policy as a whole. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992). The interpretation of contractual terms in an insurance policy is a question of law for the Court. *Morley v. Auto. Club of Michigan*, 581 N.W.2d 237, 240 (1998). Unambiguous terms must be construed and applied as written and a court should not create an ambiguity where the terms are clear. *Henderson*, 596 N.W.2d at 193. An insurance policy "should be interpreted according to

its plain meaning." *Wozniak v. John Hancock Mut. Life Ins. Co.*, 286 N.W. 99, 100 (Mich. 1939). *See also Frankenmuth Mutual Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999) (undefined terms should be interpreted in accordance with their "commonly used meaning").

In addition to the basic contract interpretation guidelines, certain rules of construction apply with particular regard to insurance contracts. Under Michigan law, ambiguities in an insurance contract are construed in favor of the insured. *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir.1993); *Fire Ins. Exchange v. Diehl*, 545 N.W.2d 602, 606 (Mich. 1996). An insurance policy is ambiguous if "it is susceptible to two different reasonable interpretations." *Comerica Bank*, 3 F.3d at 942. However, the plain meaning of a term will not be perverted merely for the purpose of benefitting an insured. *Henderson*, 596 N.W.2d at 194.

### 2. Exclusion Provisions

While the insured has the burden to prove that a policy covers the damage suffered, the insurer has the burden to prove than an exclusion to coverage applies. *Pioneer States Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 263 (Mich. Ct. App. 2013). Because it is the insurer's responsibility to clearly express limits on coverage, Michigan law requires exclusionary clauses to be strictly construed against the insurer. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992).

Here, Defendant argues that the High Hazard sublimit applies to limit all loss—both property damage and time element loss. As the Court previously held in this matter, "the High Hazard provision is an exclusion ... so Defendant has the burden of establishing the exclusion's applicability." (Dkt. 63, at 5). By invoking the $30 million sublimit in a

refusal to pay above it, Defendant has the burden to prove that the exclusionary provision at issue applies to limit Plaintiff's time element loss.

### B. Time Element Loss

#### 1. The High Hazard Flood Sublimit

The parties do not dispute that the High Hazard sublimit applies to physical loss or damage caused by flood. The question for the Court is whether the High Hazard flood sublimit also applies to time element loss caused by flood.

The Court looks first to the language in the High Hazard provision at issue. The Flood Aggregate Limit of Liability sets forth a $200 million limit "for all locations combined in any one policy year, except ... Flood for High Hazard Zones" for which there is a $30 million annual aggregate limit. (Dkt. 1, Ex. A, at 12). This provision does not specify the types of loss included. Specifically, "Flood for High Hazard Zones" makes no mention of time element loss.

The Court next turns to the Flood coverage provision, in Section B. The provision is as follows:

> **FLOOD**
>
> This "policy" covers direct physical loss or damage caused by or resulting from Flood.
>
> References and Application. The following term(s) wherever used in this "policy" means:
>
> 1) Flood:
>
>    Flood; rising waters; surface waters; waves; tide or tidal water; rain accumulation; runoff from natural or man made objects; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray there from, surface waters or sewer back-up resulting from any of the foregoing;

> regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, direct physical damage by fire, explosion or sprinkler leakage resulting from Flood is not considered to be loss by Flood within the terms and conditions of this "policy."

(*Id.* at 21). The Court is obligated to interpret the policy according to its plain meaning. *Wozniak*, 286 N.W. at 100. Here, by the plain terms of the definition and the flood coverage provision, the term "flood" refers only to physical loss or damage.

Separately, time element loss is discussed in Section C. The policy insures time element loss such as gross earnings "directly resulting from direct physical loss or damage of the type insured by this 'policy.'" (*Id.* at 47). Time element loss directly resulting from flood is covered by this Section. There is no indication in this Section, however, that sublimits applying to "physical loss or damage" caused by flood also apply to time element loss "directly resulting from" such physical loss or damage.

Plaintiff points to *Northrup Grumman Corp. v. Factory Mutual insurance Co.*, 805 F. Supp. 2d 945 (C.D. Cal. 2011), in which a similar insurance policy was analyzed. The flood sublimit at issue did not describe the types of loss to be included, so the Court looked to the definition of flood and flood loss. Because the flood coverage provision mentioned only physical loss or damage, the court concluded "time element damages related to or arising from flood are not included in the Flood sublimit." 805 F. Supp. 2d at 949. The court noted there was "nothing in the structure of the policy that makes it somehow inherent that a particular sublimit for a category of loss, e.g., physical damage to a building caused by a flood, should necessarily apply to another type of damage, e.g., business interruption loss also caused by the same flood." *Id.* at 952. Similarly

8

here, the Court finds that nothing in the policy makes it inherent that the High Hazard sublimit necessarily applies to time element loss caused by flood.

The Court next looks to other flood sublimits within the policy. The sublimit immediately following the High Hazard sublimit expressly includes two time element loss extensions: contingent time element and service interruption time element. (Dkt. 1, Ex. A, at 12). There is no similar inclusion of any type of time element loss in the High Hazard flood sublimit.

A basic principle of contract interpretation is that the "express mention of one thing implies the exclusion of another." *Marino v. Grayhaven Estates Ltd., LLC*, No. 271118, 2007 WL 2891599, at *2 (Mich. Ct. App. Oct. 4, 2007). Where insurance policies expressly include certain types of loss in some sublimits, courts have found that sublimits without reference to such loss do not include that type of loss. In *Hewlett-Packard Co. v. Factory Mutual Insurance Company*, No. 04 Civ. 2791(TPG)(DCF), 2007 WL 983990 (S.D.N.Y. March 30, 2007), the court rejected defendant's argument that a sublimit implicitly included time element loss. Because some sublimits included specific reference to time element loss, the court determined it was "natural to read any item that does *not* include such reference as not imposing a sublimit on the 'time element.'" *Id.* at *3 (emphasis in original). *See also Northrup*, 805 F. Supp. 2d at 952 (finding time element not implicitly included in the flood sublimit at issue because "[w]hen the parties wished to impose a limit on coverage, 'time element,' that related to a peril ... the parties expressly included that limitation").

Here, the parties clearly understood how to set limits of liability and sublimits that combined or included time element loss. The explicit inclusion of certain types of time

element loss in a flood-related sublimit supports a finding that the High Hazard sublimit does not implicitly include time element loss.[1]

Even if the Court were persuaded that the High Hazard sublimit was at best ambiguous as to whether it applied to time element loss, under Michigan law, Defendant's failure to clearly and unambiguously limit liability for time element loss under the High Hazard sublimit must be construed against Defendant. *Auto–Owners Ins. Co.*, 489 N.W.2d at 434.

In light of the foregoing, the Court finds the High Hazard sublimit applies only to physical loss or damage caused by flood and does not apply to time element loss.

### 2. Other Limits

Having determined that the High Hazard provision does not limit Plaintiff's time element loss claim on its own, the Court considers whether any other provisions within the Policy would limit recovery to the $30 million High Hazard sublimit, should that sublimit apply. Defendant points to the blanket per-occurrence limit and to the definition of "occurrence" to argue that the High Hazard sublimit applies to time element loss. Defendant also discusses various provisions following the list of limits and sublimits,

---

[1] Defendant points to the "excluding Time Element" parenthetical in the Transportation limit of liability to argue the converse—where time element loss is meant to be excluded from a limit or sublimit, it is expressly done. (Dkt. 96, at 34). Time element loss resulting from transit, however, is not covered *at all* under the policy. (Dkt. 1, Ex. A, at 59-60). In contrast, time element loss resulting from flood is expressly covered. The Court interprets the "excluding Time Element" parenthetical to mean that time element is not recoverable *at all* for transportation loss coverage. The Court is not persuaded that the failure to include a similar parenthetical in the High Hazard sublimit means the sublimit applies to time element loss.

focusing primarily on the "sublimit specified" provision and the "maximum sublimit" provision. The Court considers each provision, in turn.

### a. The Blanket Per-Occurrence Limit

The policy states: "The Company shall not be liable under this 'policy' for more than its proportion of **$200,000,000** for all loss or damage arising out of one 'occurrence' regardless of the number of 'locations' or coverages involved in the 'occurrence', except as more specifically limited below." (Dkt. 1, Ex. A, at 11). The term "occurrence" is defined as: "any one loss, disaster or casualty, or series of losses, disasters or casualties arising out of one event. When the word applies to loss or losses from the perils of ... Flood, ... if such perils are covered under this 'policy', one event shall be construed to be all losses arising during a continuous period of 72 hours." (Dkt. 1, Ex. A, at 75).

Defendant argues that "the definition of occurrence has the same effect of defining flood losses to include all losses arising during any one Flood event." (Dkt. 96, at 28). The Court finds that Defendant's argument must fail. While the 2011 flood is the relevant "occurrence" and this event resulted in both property damage and time element loss, Defendant fails to show how the blanket limit, which states simply that Defendant will not be liable for more than $200 million per occurrence, mandates that the High Hazard flood sublimit also applies to all loss stemming from a single occurrence. There is no such indication in the plain language of the preamble, the flood sublimits, or the policy as a whole.

Defendant relies on *El-Ad 250 West LLC v. Zurich American Insurance Company*, 988 N.Y.S.2d 462 (Sup. Ct. 2014) for support, but even the court in *El-Ad* recognized

11

that where similar policies failed to clearly state "that the flood sublimit applie[d] to all losses caused by a flood" other courts have held that the sublimits did not apply to time element loss. *El-Ad*, 988 N.Y.S.2d at 466. Here, as described above, the flood sublimit fails to state that it applies to all losses caused by a flood and the flood coverage provision includes only reference to physical loss or damage. While the blanket $200 million per-occurrence limit clearly applies to all losses caused by the 2011 flood "occurrence," this does not mean that the High Hazard flood sublimit similarly applies to all losses caused by the same flood.

### b. The "Sublimit Specified" Provision

Defendant also focuses on the provision in Section A that states, "[t]he 'company' shall not be liable for more than the Sublimit specified for such extension, endorsement, or Section in any one 'occurrence' regardless of the number of 'locations' or coverages involved in the 'occurrence'." (Dkt. 1, Ex. A, at 14). Defendant argues this sentence requires the Court to find that Defendant shall not be liable for more than the High Hazard Flood Sublimit (should that sublimit apply).

The Court considers the plain language of the provision. By the plain terms of the policy, Defendant shall not be liable for "more than the sublimit specified for such extension, endorsement, or Section in any one 'occurrence.'" The two types of coverage at issue are: property damage and time element. Property damage and time element are neither extensions nor endorsements; rather, property damage is covered under Section B and time element loss is covered under Section C. If the High Hazard sublimit applies, a plain reading of the sentence at issue would be: Defendant shall not be liable for more than the High Hazard sublimit (the "sublimit specified") for Section B ("for such

12

... Section") for the 2011 flood ("in any one 'occurrence.'"). Loss covered in Section C is not limited by the plain terms of this provision.

### c. The "Maximum Sublimit" Provision

In addition, the policy provides, "[t]he maximum Sublimit amount collectible under this 'policy' shall be the Sublimit applicable for all loss or damage resulting from a peril insured against by this 'policy', regardless of any other Sublimit involved in this 'policy.'" (Dkt. 1, Ex. A, at 14). Defendant argues this sentence requires the Court to find that the High Hazard sublimit, if applicable, is the maximum amount collectible.

Defendant supports its argument by pointing to courts in other jurisdictions that have ruled that flood sublimits apply to time element loss (not just property damage loss). In the case law cited, however, the policies considered are easily distinguished. For example, in *Altru Health System v. American Protection Insurance Company*, 238 F.3d 961, 964 (8th Cir. 2001), the policy at issue stated, "[a]ll liability for loss or expense under this Policy for any one occurrence shall not exceed the smallest of ... any applicable sublimits of liability." This language unambiguously limited the insured's recovery to the lowest amount of *any* applicable sublimit. In addition, the policy in *Altru* included an "unambiguous statement in the Flood Coverage Section that 'all claims for loss, damage or expense arising out of any one Flood occurrence shall be adjusted as one claim.'" *Id.* Importantly, the flood coverage section was not limited to physical loss or damage, as it is here.

Similarly, in *For Kids Only Child Development Center, Inc. v. Philadelphia Indemnity Insurance Company*, 260 S.W.3d 652, 654 (Tex. App. 2008), the policy at issue clearly limited recovery to $25,000 for "loss or damage caused by or resulting

from flood" in "any one occurrence." The court found this unambiguous and specific language could not be reconciled with the insured's effort to expand the amount payable for "loss or damage" beyond the $25,000 limit. *Id.* at 656.

Lastly, the court in *El-Ad* found that the policy at issue was clear: "[t]he maximum amount [the insurer] will pay for loss or damage in any one occurrence ... shall not exceed [$5 million] by the peril of flood." 988 N.Y.S.2d at 466. The limiting provision unambiguously capped the amount the insurer would pay for *all* loss or damage resulting from a flood.

Plaintiff counters that the "maximum sublimit" provision is inapplicable because it instructs which sublimit amount will be collectible when more than one sublimit may apply, and here there is only one sublimit at issue. (Dkt. 90, at 27). Plaintiff further argues that the result would be the same if the language in this provision were deemed ambiguous, because pursuant to Michigan law, any lack of clarity in limitations on coverage should be construed in favor of the insured. (Dkt. 90, at 28).

The Court agrees with Plaintiff. The plain terms of the provision at issue determine what is to be the "maximum *sublimit* amount collectible," not the "maximum *amount* collectible."  As noted above, only one sublimit may apply per extension, endorsement, or Section. If more than one sublimit is applicable after loss due to a peril (*e.g.*, for different Sections), the plain terms of the "maximum sublimit" provision instruct that the highest amount collectible shall be the Sublimit applicable for all loss. Here, the High Hazard sublimit is the only sublimit at issue. There is no sublimit for general time element loss. If the High Hazard sublimit applies, then that is to be the "maximum

*sublimit* amount collectible." This provision does not, however, limit other covered losses that are not subject to a sublimit.

While the Court must give effect to all clear exceptions, the insured has the burden to clearly state exceptions to coverage. *Pioneer*, 836 N.W.2d at 263. The Court finds Defendant has failed to show that any other limit or provision within the policy clearly and unambiguously limits recovery of Plaintiff's time element loss to the $30 million High Hazard sublimit.

## IV. Conclusion

Because the Court finds that Defendant bears the burden of establishing that the High Hazard provision limits Plaintiff's recovery for both property damage loss and time element loss and that Defendant did not make that demonstration, the Court DENIES Defendant's cross-motion for partial summary judgment and GRANTS Plaintiff's motion for partial summary judgment on its time element loss of $25,093,533.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 8, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 8, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager