UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Federal-Mogul Corporation

      Plaintiff,

v.

Insurance Company of the State of
Pennsylvania,

      Defendant.
_____/

Case No. 12-12005

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF THE TEAM EXPERTS [27]; DENYING PLAINTIFF'S MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. LEE E. BRANSCOME [29]; AND GRANTING DEFENDANT'S MOTIONS TO EXCLUDE EXPERT REPORTS, OPINION TESTIMONY, AND SUR-REBUTTAL REPORT OF DR. GERALD GALLOWAY [32, 33]**

This matter comes before the Court on the parties' motions to exclude expert reports and testimony. For the reasons stated herein, Plaintiff's motion to exclude the report and testimony of the TEAM Experts is GRANTED. Plaintiff's motion to exclude the reports and testimony of Dr. Lee E. Branscome is DENIED. Defendant's motions to exclude the reports and testimony of Dr. Gerald Galloway are GRANTED.

**I.    Facts**

In 2011, a flood caused substantial damage to Plaintiff's facility, located in the Rojana Industrial Park in Ayutthaya, Thailand (the "Rojana Facility"). The parties stipulate that Plaintiff suffered a loss of $39,406,467 in property damage and $25,093,533 in "time element loss" (i.e., economic loss due to an inability to operate normally). Pursuant to an insurance policy between the parties, Defendant paid Plaintiff

$30 million for its losses, stating that a "high hazard flood zone" provision limited the amount it owed. Plaintiff filed suit to recover the remainder of its losses.

The Court initially granted summary judgment for Plaintiff and the Sixth Circuit reversed. (Dkt. 63; Dkt. 84.) The parties then cross-moved for partial summary judgment on Plaintiff's time element loss claim. (Dkt. 90; Dkt. 96.) The parties requested that the Court decide whether Plaintiff's time element loss claim would be limited by the high hazard sublimit, assuming it applied for purposes of the motions. (*Id.*) The Court determined that the high hazard sublimit would *not* limit recovery of Plaintiff's time element loss if it applied, and therefore granted summary judgment in favor of Plaintiff on its time element loss claim of $25,093,533. (Dkt. 103.)

As for Plaintiff's property damage claim, the question remains as to whether the high hazard sublimit applies and depends on determination of a factual issue: whether the property at issue was located within a 100-year floodplain at the time of the loss.[1] If the property at issue was located within a 100-year floodplain, the high hazard sublimit applies and Plaintiff's property damage loss will be capped at $30 million. If the facility was not located within a 100-year floodplain, then Defendant will likely be liable for the remaining property damage above the $30 million limit, in the amount of $9,406,467.

Although the Sixth Circuit did not decide the issue, several of its holdings shape the Court's analysis. The Sixth Circuit determined that whether the Rojana Facility was

---

[1] As the Court previously determined, the question is whether the Rojana Facility was located in a 100-year floodplain *at the time of the loss* because "a party's rights under an insurance policy are fixed when the loss occurs." (Dkt. 63, at 16.) *See also Certain Underwriters of Lloyds, London v. U.S. Indus. Serv., LLC*, 825 F. Supp. 2d 882, 889 (E.D. Mich. 2011.) The Sixth Circuit's holding—that a floodplain can exist absent designation on a map—does not alter this conclusion.

located in a 100-year floodplain at the time of the flood is a question of fact. (Dkt. 84, at 6.) The court explained, "[a]n area was within a 100-year floodplain on a certain date if, on that date, it would experience flooding during a 100-year flood, i.e., there was a 1% chance of it experiencing flooding in any given year." (*Id.*) The court also concluded that a 100-year floodplain can exist absent identification on a regulatory map. (*Id.* at 9.) Both parties have presented expert opinions on the remaining issue, and motions to exclude three experts' reports and testimony are presently before the Court.[2]

## II. Standard of Review

Courts considering expert testimony examine admissibility within the context of Federal Rule of Evidence 702. Under the rule, a witness who is qualified as an expert may testify in the form of opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993). *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (expanding *Daubert* analysis to cover expert testimony based not only on "scientific" knowledge, but also on "technical" and "other specialized" knowledge). This rule "imposes a 'gatekeeping' duty on district courts [to] exclude

---

[2] Plaintiff has withdrawn Kenneth S. Abraham's report and opinions, (Dkt. 112), and Defendant has not filed a motion to exclude the report of Plaintiff's expert, Dr. Potter.

3

unreliable and irrelevant evidence." *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 761 (E.D. Mich. 2010) (internal citation omitted). If the expert addresses matters within the understanding or common knowledge of the average juror, then we "do not need an expert because the testimony will not assist the trier of fact to understand the evidence or determine a fact in issue." *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) (internal quotation marks omitted).

An expert opinion based on scientifically valid principles will satisfy Rule 702, but "an expert's subjective belief or unsupported speculation will not." *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, No. 09-cv-10179, 2011 WL 6004572, at *4 (E.D. Mich. Dec. 1, 2011). Finally, the party offering expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

### III. Analysis

Four motions to exclude expert reports are presently before the Court. Plaintiff seeks to exclude the opinions and testimony of the TEAM Experts and Dr. Lee E. Branscome; Defendant moves to exclude the opinions, testimony, and purported "sur-rebuttal report" of Dr. Gerald Galloway. The Court considers each, in turn.

#### A. Plaintiff's Motion to Exclude the TEAM Experts

Defendant offers the expert opinion and testimony of Dr. Pornsak Suppataratarn and Mr. Chawalit Chantararat, collectively the TEAM Experts.[3] The TEAM Experts have

---

[3] The Court follows the parties' practice of referring to the TEAM experts by their first names, in accordance with Thai custom.

studied hydrology and flood conditions in the Chao Phraya River Basin[4] and throughout Southeast Asia for over three decades.[5] (*See* Dkt. 48, at 10-11.) According to Defendant, the TEAM Experts have been hired regularly for their "direct expertise on flooding in Thailand, due to their skills with their statistical frequency analysis and computer modeling" as used in the subject report. (*Id.* at 12.) For example, they have been retained by Thai Government's Royal Irrigation Department to study flood conditions in the Chao Phraya River Basin using the same River Network Model utilized in this study. (*Id.*) The TEAM Experts offer the opinion that Plaintiff's facility in the Rojana Industrial Park in Thailand is totally situated in a 100-year floodplain. (Dkt. 35, at 3.) In a declaration submitted after the report, Mr. Chawalit added that it is the TEAM Experts' opinion that the Rojana Industrial Park "was situated in a 100-year floodplain at the time of the 2011 flood and prior to the 2011 flood." (Dkt. 48-2, at ¶ 49.)

Plaintiff seeks to have the testimony of the TEAM experts excluded for three reasons: (1) it is not based on a scientifically valid methodology, (2) it does not satisfy Rule 702's "fit" requirement, and (3) the opinion is unfairly prejudicial. Because the Court finds it dispositive, the Court addresses the second argument first.

    **i. Fit**

Under Rule 702, expert opinion evidence must help the trier of fact determine a fact in issue. Fed. R. Evid. 702. A valid scientific connection to the pertinent inquiry is a precondition to admissibility. *Daubert*, 509 U.S. at 591-92. Plaintiff argues the TEAM

---

[4] The TEAM Experts' report states that the Rojana Facility is located in the Lower Chao Phraya River Basin. (Dkt. 35, at 10.)

[5] Plaintiff does not move to exclude the TEAM Experts for lack of qualifications.

Experts' opinion does not satisfy this "fit" requirement because they used the 2011 flood data in their calculations and to form their opinions. Therefore, Plaintiff claims their opinions and testimony would not help the jury to determine the fact in issue—i.e., whether the Rojana Facility was located in a 100-year floodplain *at the time of* the 2011 flood. That is, "[b]y including [data from] the 2011 flood itself in its calculations—by far the largest ever recorded in Thailand"—the TEAM Experts' opinion does not speak directly to the disputed issue. (Dkt. 27, at 24.)

Defendant responds that it was proper to include the 2011 data to support their conclusion and that "[u]sing the data from the 2011 flood is evidence of the area's propensity for flooding." (Dkt. 120, at 15.) Mr. Chawalit explained that "including that reliable data provides a more accurate statistical frequency analysis to determine the 100-year return period for that indicator, will improve the result, and because it is a matter of good hydrological practice." (Dkt. 48-2, at ¶ 21.) But Dr. Pornsak testified that their results would have been different if they had not included the 2011 data; indeed, when asked whether the 2011 data skewed the results toward larger flooding, he answered, "there would definitely be a change but how much, I'm not sure." (Dkt. 28-3, at 12.) Dr. Pornsak stated further that "if [they] took out 2011, the recurrence intervals would ... go up" for their estimates for large floods. (*Id.*)

This Court previously rejected Defendant's suggestion that it can "create a post-loss floodplain, using the 2011 flood in its creation." (Dkt. 63, at 16.) The Sixth Circuit's decision does not affect this aspect of the Court's prior holding.[6] In fact, the Sixth Circuit

---

[6] The Sixth Circuit held that a 100-year floodplain can be determined either ex ante by a regulator or after a flood. (Dkt. 84, at 8-9.) That this question may be answered after a

recognized that whether an area was within a 100-year floodplain depends on if "*on a certain date* ... there was a 1% chance of it experiencing flooding in any given year." (Dkt. 84, at 6.) This stems from an "assessment of what is expected to occur in the future" and may be established through "testimony of past experience ... or even expert opinion." (*Id.* at 7.) Notably, the appellate court did not suggest that what was "expected to occur" may be established by using data from what actually occurred. The Court concludes that because the opinion evidence utilizes data from the flood at issue, it would not help the jury determine the only remaining disputed fact: whether the Rojana Facility was located in a 100-year floodplain at the time of the 2011 flood. Accordingly, the opinion and testimony of the TEAM Experts are excluded.

### B. Plaintiff's Motion to Exclude Dr. Lee E. Branscome

Defendant also offers the report and testimony of Dr. Lee E. Branscome. Dr. Branscome holds a Ph.D. in meteorology from the Massachusetts Institute of Technology and has 35 years of experience in the field.[7] (Dkt. 49, at 8.) Dr. Branscome has previously analyzed flood risks and given opinions on matters in the United States, Ireland, and Brazil. (Dkt. 49, at 9.) Dr. Branscome offers the opinion that Plaintiff's Rojana Facility "is within a 100-year floodplain and has at least a 1% annual chance of flooding." (Dkt. 31-6, at 2.)

---

flood does not change the Court's conclusion that the relevant question is whether the Rojana Facility was located within a 100-year floodplain *at the time of the flood*, and therefore cannot utilize data from the 2011 flood.

[7] Plaintiff does not seek to exclude Dr. Branscome on the basis of his qualifications.

Plaintiff argues that Dr. Branscome's reports and testimony are unreliable and should be excluded because he "has no methodological basis."[8] (Dkt. 29, at 9.) That is, Plaintiff argues that Dr. Branscome's conclusions are "based on anecdotal evidence of flooding and improper inference from second- and third-hand sources." (Dkt. 29, at 8.)

### i. Methodology

Expert testimony must be based on "sufficient facts or data" and must be the "product of reliable principles and methods." Fed. R. Evid. 702(b), (c). Plaintiff argues that Dr. Branscome's opinion and testimony should be excluded because the only methodology he discusses are general descriptions of "data and tools that one could use to determine a 100-year floodplain," not any that he "actually used." (Dkt. 59, at 9.) Plaintiff adds that Dr. Branscome testified that he looked at scientific research to see what other people have done and, without having spoken to any of these other scientists, presumptively stated that "certainly they followed ... [reliable] procedures." (*Id.*) Plaintiff argues that Dr. Branscome has failed to identify any reliable methodology that he actually used, and his testimony and opinions should be excluded.

Defendant responds that Dr. Branscome followed several commonly-accepted methods to arrive at his opinions. Dr. Branscome states that his methodology included reviewing and analyzing publicly-available data and information on the topography of the area, the climate and historical extent and frequency of flooding of the area, and the results of peer-reviewed studies performed prior to 2011 on the risk of flooding in the

---

[8] The Court need not address the additional argument that Defendant's expert fails to delineate boundaries of the 100-year floodplain on a map; the Sixth Circuit has mooted this issue by holding that a 100-year floodplain can exist without designation on a map.

Rojana Facility area. (Dkt. 49, at 18-19.) Dr. Branscome states that he followed accepted methods for risk assessment as set forth in many of the sources on which he relied. (Dkt. 49-2, at 10 ("The UN and OAS documents outline accepted methods for risk assessment within floodplains that I followed in my analysis.").) According to Dr. Branscome, "[i]t is the standard practice of scientists to review the published, peer-reviewed results of other regarded scientists on the subject of interest." (*Id.* at 9.) Moreover, he states "[i]t is possible to determine if a particular site is within a 100-year floodplain by various, often complementary, methods," including "[t]he examination of the historical extent and frequency of occurrence of flooding in an area." (Dkt. 30-6, at 3.) For example, Dr. Branscome states he relied on the Japan International Cooperation Agency (JICA) Study on Integrated Plan for Flood Mitigation in Chao Phraya River Basin Final Report (1999) and the World Bank Reports (2009), which were "comprehensive flood risk studies of the Chao Phraya River Basin and its surroundings." (Dkt. 49-2, at 9.) As Dr. Branscome explains, "much of the data collection and analysis was already published and available for [his] review."[9] (*Id.*)

Experts are permitted a "wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (internal quotation marks omitted). The Court finds that the fact that Defendant did not gather his own original data, but rather relied on data collected from

---

[9] According to Defendant, these reports include maps purportedly showing that the Rojana Facility was not merely within a 100-year floodplain, but "was also within a 30-year and even a 5-year floodplain." (Dkt. 120, at 5.)

9

other published sources, is not enough to deem his opinion and testimony inadmissible under Rule 702. *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000) (noting that "an expert may rely on data that she did not personally collect"); *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 767-68 (S.D. Ohio 2015) (finding that the expert reasonably relied on data she did not collect). Here, much of the data and sources relied upon by Dr. Branscome were governmental reports published by respected international agencies or peer-reviewed publications. (Dkt. 49-2, at 8-10.) Dr. Branscome further states that such sources outlined accepted methods for risk assessment within floodplains and that he followed such methods in his own analysis. (Dkt. 49-2, at 10.)

The Court concludes that Dr. Branscome's opinion and testimony are based on sufficiently reliable principles and methods. Any issue with the underlying data relied on and analyzed by Dr. Branscome may be challenged by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

**C. Defendant's Motion to Exclude Dr. Gerald Galloway**

Finally, Plaintiff offers the opinions and testimony of Dr. Gerald Galloway. Dr. Galloway is a flood risk manager whose expertise includes "the methods and procedures for delineating 100-year floodplains on flood maps." (Dkt. 41, at 20.) He spent 38 years in the Army Corp of Engineers and is a professor of engineering at the University of Maryland. (*Id.* at 25.) He has provided flood control advice under appointments by Presidents and one Secretary of State. (*Id.*) Dr. Galloway has also

served on several national committees that studied "geospatial management issues, including FEMA flood maps." (*Id.*)

Defendant argues that Dr. Galloway has not rendered an opinion as to the only remaining question in this case; therefore, his opinion testimony lacks "fit" under Rule 702 and is irrelevant as to the remaining issue. Defendant also argues that Dr. Galloway lacks the qualifications necessary to render a reliable and useful opinion on the issue in dispute.[10]

### i. Fit

As noted above, expert testimony is only admissible if it "is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Defendant argues Dr. Galloway's opinions have no relevance or "fit" to this case because "he does not opine on the major issue requiring expert testimony." (Dkt. 32, at 15.) In addition, Defendant argues that because Dr. Galloway's opinions all rely on the National Flood Insurance Program standard, which is not in effect in Thailand and does not apply to the insurance provision at issue, his testimony is inapplicable and irrelevant. (*Id.* at 21-24.)

Under paragraph 2(b) of the insurance contract, a High Hazard flood zone is defined as "all property in areas where the National Flood Insurance Program (NFIP) is ***not*** in effect, and where all property at a 'location' is partially or totally situated in an area which is within a 100 year flood plain or its worldwide equivalent." (Dkt. 1-1, at 21

---

[10] Because the Court finds the "fit" issue dispositive, it need not address Dr. Galloway's qualifications in detail.

(emphasis added).)[11] The NFIP is not in effect in Thailand. In its initial motion for summary judgment and subsequent appeal, Plaintiff argued that even under the language in paragraph 2(b), a floodplain must be "denoted by an NFIP or similar map designated with the regulatory purpose of informing insurance-collection proceedings." (*See* Dkt. 84, at 7.) Dr. Galloway's opinions were offered to support this argument. (Dkt. 41, at 14.) But the Sixth Circuit rejected this argument and concluded that a 100-year floodplain can exist even if not designated as such on a regulatory map. Plaintiff has admitted that Dr. Galloway's opinions were "**not** [offered] to establish whether [Plaintiff's] facility is or is not in a theoretical, undefined 100-year floodplain." (Dkt. 41, at 14 (emphasis added).)

In addition, Dr. Galloway testified:

> Q: Do you have an opinion as to whether the area of the Rojana Industrial Park and the Federal-Mogul property is in a 100-year floodplain?
>
> **A: No.**
>
> Q: Have you done any type of analysis to determine whether the area of the Rojana Industrial Park and the Federal-Mogul properties are in a 100-year floodplain?
>
> **A: No.**

(Dkt. 32-5, at 110.) Dr. Galloway testified further, "for me to determine if I'm in a hundred-year floodplain, wherever I am, I need to see a map that shows me what the hundred-year floodplain is." (*Id.* at 83.) He continued, "the tool of the trade" is "to have a

---

[11] In contrast, paragraph 2(a) applies to properties situated in areas that *have* been designated "on a Flood Insurance Rate Map (FIRM) to be a special Flood Hazard Area." (Dkt. 1-1, at 21.)

map that delineates that hundred-year floodplain." (*Id.* at 84.) Again, the Sixth Circuit has determined that it is not necessary for a 100-year floodplain to appear on a map in order for it to exist.

Dr. Galloway's opinions all appear to be based on premises rejected by the Sixth Circuit—i.e., that a 100-year floodplain cannot or should not be determined retrospectively and that it must appear on a public, pre-loss flood map in order to exist. In light of Dr. Galloway's admission that he has not rendered an opinion nor done any type of analysis to determine whether the Rojana Facility was in a 100-year floodplain, the Court concludes his opinions and testimony would not assist a trier of fact in deciding the only remaining issue. "[E]xpert testimony that does not relate to any issue in the case is not relevant and therefore not helpful." *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Dr. Galloway's opinions do not "fit" the remaining factual question at issue and will thus be excluded.

### ii. Sur-Rebuttal

Defendant separately moves to exclude Dr. Galloway's "sur-rebuttal report." (Dkt. 33.) After submitting a report and a rebuttal report, Plaintiff provided Defendant with a third document written by Dr. Galloway, entitled "Summary of Comments on Branscome Rebuttal Report." (Dkt. 33-6.) According to Defendant, this document was provided on June 17—the day before Dr. Galloway's deposition. (Dkt. 33, at 2.) Defendant argues this was an improper "sur-rebuttal" and is untimely and in violation of Federal Rule of Civil Procedure 26(a)(2). Plaintiff responds that this document was merely a three-page memory aid created by Dr. Galloway in preparation for his deposition. (Dkt. 45, at 6.)

Because Dr. Galloway's observations in the June 17 document stem from his underlying report, which has been excluded, the Court need not address this motion in detail. Dr. Galloway's June 17 "Summary of Comments on Branscome Rebuttal Report" is similarly excluded.

### III. Conclusion

For the above-stated reasons, Plaintiff's motion to exclude the expert report and testimony of the TEAM Experts is GRANTED. Plaintiff's motion to exclude expert reports and testimony of Dr. Lee E. Branscome is DENIED. Defendant's motions to exclude expert reports, opinion testimony, and the sur-rebuttal report of Dr. Gerald Galloway are GRANTED.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 26, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 26, 2016, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager