UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL-MOGUL CORPORATION,

    Plaintiff,

v.

INSURANCE COMPANY OF THE STATE
OF PENNSYLVANIA,

    Defendant.
                                    /

Case No.12-12005

Honorable Nancy G. Edmunds

**OPINION AND ORDER ACCEPTING IN PART AND REJECTING IN PART
PLAINTIFF'S PROPOSED FORM OF FINAL JUDGMENT [139]**

This case involves an insurance dispute between Plaintiff Federal-Mogul Corporation and Defendant Insurance Company of the State of Pennsylvania. The question now before the Court is whether to accept Plaintiff's proposed form of final judgment, and it arises under unusual circumstances. On October 8, 2015, this Court issued an opinion and order granting partial summary judgment in Plaintiff's favor. (Dkt. 102.) Sixteen months later, the parties determined that they shared an interest in appealing that opinion immediately and avoiding the expenses of trial. Accordingly, the parties consented on February 16, 2017 to the filing of an Amended Complaint that mooted the only issue remaining in this case. (*See* Dkt. 136.) The parties also reported an intent to stipulate to a proposed final judgment. (*Id.*) Based on those submissions, the Court permitted the filing of an Amended Complaint and directed the parties to submit a proposed final judgment. (Dkt. 137.) Since then, the parties' nascent harmony has dissolved, and no stipulated judgment was ever filed.

Instead, Plaintiff has filed a proposed judgment, and Defendant has objected on two grounds, both of which relate to Plaintiff's ability to recover prejudgment interest. (Dkt. 139; Dkt. 140.) Defendant first objects that Plaintiff may not collect prejudgment "penalty" interest under Michigan Compiled Laws (M.C.L.) § 500.2006(4). Second, Defendant objects that Plaintiff is not entitled to prejudgment interest of any kind after October 8, 2015, the date this Court granted partial summary judgment in Plaintiff's favor. For the reasons that follow, the Court OVERRULES Defendant's first objection and SUSTAINS the second objection. As a result, the Court ACCEPTS IN PART and REJECTS IN PART Plaintiff's proposed judgment.

I.  **Background**

The facts related to Plaintiff's entitlement to prejudgment interest span a labyrinthine procedural history. Plaintiff's claims date back to 2011, when a flood caused significant losses at Plaintiff's Rojana Industrial Park (the Rojana Facility), which Defendant insured. The alleged losses included both "Property Damage Loss" (damage to tangible property) and "Time Element Loss" (loss incurred due to a break in operations). According to the Amended Complaint, Plaintiff submitted an initial claim for partial payment of $25 million, and Defendant paid that entire claim on February 15, 2012. (Dkt. 138 at ¶ 16.) Then, on February 23, 2012, Plaintiff requested another payment of $18 million. (*Id.* at ¶ 17.) Defendant responded to Plaintiff's second claim in April 2012, refusing to pay more than $5 million and arguing that a High Hazard Flood Sublimit of $30 million limited the coverage for both "Property Damage Loss" and "Time Element Loss." (*Id.* at ¶¶ 18-19.) Plaintiff disagreed and filed suit, alleging that Defendant was in breach of contract.

Plaintiff filed its initial Complaint on May 5, 2012. The Complaint estimated that the losses related to the flood totaled $88 million. (Dkt. 1 at ¶¶ 12-15.) It did not mention prejudgment penalty interest under M.C.L. § 500.2006(4), but it did pray for "all other just and proper relief." (*Id.* at ¶ 80.)

Around a year later, in July 2013, the parties filed cross-motions for summary judgment. (Dkt. 20; Dkt. 31.) Defendant argued, *inter alia*, that: (1) the $30 million sublimit applied because the Rojana Facility was within a 100-year floodplain; and (2) this sublimit applied to Plaintiff's Time Element Loss (as opposed to simply the Property Damage Loss). (Dkt. 31, at 12, 16.) On December 10, 2013, this Court granted summary judgment in Plaintiff's favor, finding that Defendant had not established that the Rojana Facility was within a 100-year floodplain. (Dkt. 63.) As a result, the Court did not reach the issue of whether the sublimit applied to Plaintiff's Time Element Loss. In conjunction with that decision, the Court entered a judgment dismissing the case. (Dkt. 64.)

Three months after that, on March 4, 2014, the Court entered a Corrected and Stipulated Form of Amended Judgment. (Dkt. 77.) Therein, the parties stipulated that Plaintiff's Time Element Loss was $25,093,533 and that the Property Damage Loss was $39,406,467, totaling $64,500,000. (*Id.*) The Court then entered judgment in favor of Plaintiff in the amount of $34,500,000 because Defendant had already paid Plaintiff $30,000,000. (*Id.*) The Amended Judgment also stated that Plaintiff was "entitled to prejudgment interest in the amount of $1,219,407.39." (*Id.*) The Amended Judgment did not mention penalty interest.

Defendant then appealed, and the Sixth Circuit reversed and remanded on May 18, 2015. *Federal-Mogul Corp. v. Insurance Co. of the State of Penn.*, 612 F. App'x 325 (6th

Cir. 2015). The Sixth Circuit held that this Court applied the incorrect standard when determining whether the Rojana Facility was located within a 100-year floodplain, and it provided instructions for reconsidering the issue. *Id.* at 329. The Sixth Circuit declined to address whether the $30 million sublimit applied to Plaintiff's Time Element Loss. *Id.*

Following the reversal and remand, Plaintiff sought permission to file a second motion for summary judgment as to whether the $30 million sublimit applied to Plaintiff's Time Element Loss. (Dkt. 87.) Plaintiff also proposed a schedule for considering the remaining issues in a piecemeal, sequential fashion. (*Id.*) The Court permitted Plaintiff to file the second motion for summary judgment and adopted the proposed schedule, finding that it would advance this litigation in an orderly fashion. The parties then supplied briefing and oral argument regarding whether the sublimit applied to Plaintiff's Time Element Loss.

Then, on October 8, 2015, this Court issued an opinion and order granting partial summary judgment in Plaintiff's favor, holding that the sublimit did not apply to Plaintiff's Time Element Loss.[1] (Dkt. 102.) This order also stated that Plaintiff was entitled to $25,093,533, the amount of Time Element Loss stipulated by the parties. (*Id.*) As a result of that decision, the parties' dispute narrowed to the $9,406,467 of unpaid Property Damage Loss, the recovery of which depended on whether the Rojana Facility was located within a 100-year floodplain. Because that issue remained unresolved, the Court's October 8, 2015 decision did not dispose of the case, was not accompanied by a judgment, and did not mention prejudgment interest. Since then, the Court has ruled on motions to exclude expert testimony and set the case for trial on April 4, 2017.

---

[1] The Court entered an amended order to correct a typographical error on October 15, 2015. (Dkt. 103.)

Then, in February 2017, two months before trial was set to begin, Plaintiff filed an unopposed motion seeking leave to file an amended and supplemental complaint "to moot the only remaining issue [whether the Rojana Facility was located in a 100-year floodplain] in this case by voluntarily limiting the relief Plaintiff seeks, thus allowing an appeal and hopefully saving the parties the expense and delay of a trial." (Dkt. 134, at 6.) Plaintiff offered to "relinquish, with prejudice, its loss amount of $9,406,467 attributable to unpaid property damage if [Plaintiff] is able to thereby moot the need for the expense of trial."[2] (*Id.* at 7.) Six days later, the parties filed a stipulation consenting to the filing of an Amended Complaint that mooted the only issue remaining in this case. (*See* Dkt. 136.) The parties also reported an intent to stipulate to a proposed final judgment. (*Id.*)

Based on those submissions, on February 16, 2017, the Court granted Plaintiff leave to file an Amended Complaint and directed the parties to submit a proposed final judgment. (Dkt. 137.) Plaintiff immediately filed its Amended Complaint, which reiterates the original Complaint's prayer for all "just and proper relief" and does not explicitly seek penalty interest. (Dkt. 138.) The Court never received any stipulated final judgment, however, because the parties could not resolve a dispute over Plaintiff's entitlement to prejudgment interest. (*See* Dkt. 139; Dkt. 140.)

Around a month later, on March 10, 2017, Plaintiff filed its Proposed Form of Final Judgment. (Dkt. 139-2.) Therein, Plaintiff seeks an award of penalty interest under M.C.L. § 500.2006(4) in the amount of $5,710,483.23, as well as prejudgment interest under

---

[2] Earlier, Defendant had filed a motion for a certificate of appealability as to the Court's October 8, 2015 decision, and Plaintiff had opposed it. (Dkt. 106; Dkt. 107.) The motion was denied. (Dkt. 109.)

5

M.C.L. § 600.6013(8) in the amount of $2,927,192.07. (*Id.*) Plaintiff calculates the § 500.2006(4) penalty interest from May 3, 2014 (60 days after this Court entered its Corrected and Stipulated Form of Amended Judgment with the stipulated amount of Time Element Loss) until March 15, 2017 (the date Plaintiff estimated this Court would enter final judgment).[3] Plaintiff calculates its § 600.6013(8) prejudgment interest from May 3, 2012 (the day Plaintiff filed its initial Complaint) until March 15, 2017.

Plaintiff also filed an Alternative Proposed Final Judgment that seeks penalty interest under § 500.2006(4) and prejudgment interest § 600.6013(8) "in amounts to be determined." (Dkt. 139-3.) Defendant objects to both of Plaintiff's proposals. (Dkt. 140.)

## II. Analysis

Defendant objects to two aspects of Plaintiff's proposed forms of final judgment. Defendant first argues that Plaintiff may not collect any prejudgment "penalty" interest under M.C.L. § 500.2006(4). Second, Defendant argues that Plaintiff is not entitled to prejudgment interest of any kind after October 8, 2015, the date this Court granted partial summary judgment to Plaintiff on the issue of Time Element Loss. For the reasons that follow, the Court overrules the first objection and sustains the second.

**A. Whether Plaintiff Is Entitled to "Penalty" Interest Under M.C.L. § 500.2006(4)**

M.C.L. § 500.2006(4) allows a claimant under an insurance policy to recover twelve percent interest from an insurer following a delay in payment on a claim. Its purpose is to punish insurers for dilatory practices in making payments to an insured. *Yaldo v. North Pointe Ins. Co.*, 578 N.W.2d 274, 277 (Mich. 1998). The statute provides as follows: "If

---

[3] That estimated date of entry is baffling because, under Eastern District of Michigan Local Rule 58.1(c), Defendant had seven days to object to Plaintiff's proposal.

benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract." M.C.L. § 500.2006(4). Where, as here, the insured is a first-party claimant, penalty interest accrues "irrespective of whether the claim is reasonably in dispute." *Griswold Props., L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007). Application of the statute is therefore "fairly mechanical." *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 2017 WL 227958, at *2 (E.D. Mich. Jan. 19, 2017).

Here, Plaintiff argues that the two conditions triggering § 500.2006(4) interest--proof of loss and failure to pay--are present because: (1) Defendant received satisfactory proof of loss when the parties stipulated to $25,093,533 of Time Element Loss in the March 4, 2014 Amended Judgment; and (2) Defendant failed to pay that stipulated amount within sixty days. Defendant disagrees, opposing *any* award of penalty interest on four grounds, each of which the Court addresses below.[4]

**1. The Stipulation Constitutes Satisfactory Proof of Loss**

Defendant first objects to Plaintiff's contention that the parties' stipulation to the amount of Time Element Loss constitutes satisfactory proof of loss. (*See* Dkt. 144, at 3-4.) Defendant argues that Plaintiff must prove through a motion or trial that it provided satisfactory proof of loss. (*See id.* at 4.) The Court disagrees with Defendant.

As a threshold matter, Michigan's penalty interest statute "does not define what constitutes 'satisfactory proof of loss.'" *Decker Mfg. Corp. v. Travelers Indem. Co.*, 2015

---

[4] Defendant does not dispute that it did not pay the stipulated amount of Time Element Loss within sixty days of the stipulation.

WL 3902012, at *5 (W.D. Mich. June 25, 2015). However, the Sixth Circuit has observed: "Although there is no discrete legal definition of when a proof of loss is 'satisfactory' for the purposes of awarding interest, the Michigan courts have stated that '[t]he amount of loss must be liquidated, known, or easily ascertained at the moment liability is denied for interest to be properly awarded.'" *ACME Roll Forming Co. v. Home Ins. Co.*, 31 F. App'x 866, 872 (6th Cir. 2002) (quoting *Whitney v. Allstate Ins. Co.*, 238 N.W.2d 410, 413 (Mich Ct. App. 1975)); *see also* 13 COUCH ON INSURANCE § 189:59 (3d ed. 1999) (December 2016 update) ("An insurer has 'satisfactory proof of loss,' where proof is sufficient to fully apprise the insurer of insured's claim."). And the Michigan Court of Appeals has explained that satisfactory proof of loss, within the meaning of timely payment statute, "does not require agreement of the parties as to the amount of damages, but is rather the process of the insured providing the documents and evidence required by the insurer to begin processing the claim." *Griswold Props.,* 740 N.W.2d 659, 673, *opinion reinstated in part, superseded in part on other grounds*, 741 N.W.2d 549.

Here, the stipulation to the amount of Time Element Loss deprives Defendant of any basis for arguing that it did not receive satisfactory proof of loss. The United States Supreme Court has stated that factual stipulations are formal concessions that are conclusive in a case, withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677-78 (2010) (citations omitted). As a result, when the parties stipulated to the amount of Time Element Loss, it became not only "known" or "easily ascertained" but conclusive for the purposes of this case. Defendant cannot seriously argue that it was not fully apprised of or had not received the evidence necessary

to process Plaintiff's claim by the time of the stipulation; the stipulation reflects an acknowledgment of the claimed damages. Accordingly, Defendant received satisfactory proof of loss, *at the latest*, when the parties stipulated to the amount of loss.

The Court also rejects Defendant's argument that this issue involves a question of fact that the Court cannot decide. Defendant's own briefing undermines its position, as it asserts correctly that penalty interest may be awarded if "proven on undisputed facts." (Dkt. 144, at 5.) Proof on undisputed facts is precisely what a stipulation offers. *Christian Legal Soc.*, 561 U.S. at 677-78. As the Supreme Court has stated, the "[d]etermination of the meaning and effect of a stipulation . . . is not a factual finding. . . ." *Braxton v. United States*, 500 U.S. 344, 350 (1991). Thus, the parties' disagreement over the meaning of the stipulation does not give rise to a genuine factual dispute, and this Court is entitled to decide the question of satisfactory proof of loss as a matter of law.

### 2. Defendant Received Fair Notice of Plaintiff's Request for Penalty Interest

Defendant next objects that Plaintiff cannot recover § 500.2006(4) interest because Plaintiff did not provide fair notice of its intention to pursue penalty interest. Defendant argues that, by requesting penalty interest for the first time in its Proposed Form of Final Judgment, Plaintiff has prejudiced Defendant's ability to conduct necessary discovery and properly litigate the issue. This Court rejects Defendant's argument.

Plaintiff expressly raised its right to penalty interest in its Proposed Form of Final Judgment, and Defendant has exercised its opportunity to be heard, both through its objections briefs and at a hearing before the Court. Furthermore, Defendant's complaints that it was deprived of an opportunity to "discover the facts necessary to determine whether benefits were paid on a timely basis" and "whether satisfactory proof of loss was received"

9

lack merit. (Dkt. 140, at 9-10.) The stipulation renders both of those concerns moot. All of the facts related to Plaintiff's entitlement to penalty interest are stipulated and known to both parties and the Court. Accordingly, this Court finds that Defendant has received fair notice of Plaintiff's intention to pursue penalty interest.

### 3. M.C.L. § 500.2006(4) Interest Need Not Be Pled to Be Recovered

Third, Defendant objects that Plaintiff cannot recover § 500.2006(4) interest because neither the Complaint nor the Amended Complaint pleads penalty interest. Defendant argues that § 500.2006(4) interest must be pled to be recovered. To support that position, Defendant cites a string of cases in which insureds pled penalty interest; however, none of those decisions establishes that a failure to plead penalty interest would preclude its recovery. In fact, Defendant has failed to identify any authority supporting its argument, and the relevant authority suggests that M.C.L. § 500.2006(4) interest need not be pled to be recovered.

According to Michigan courts, a request for penalty interest under § 500.2006(4) is not a freestanding cause of action. *Hastings Mut. Ins. Co. v. Mosher Dolan Cataldo & Kelly, Inc.*, 2013 WL 1149790, at *18 (Mich. Ct. App. Feb. 14, 2013) ("This Court has held several times that there is no private cause of action for damages under MCL 500.2006, although a private person may recover penalty interest for a violation of this statute."), *vacated on other grounds*, 838 N.W.2d 874 (Mich. 2013); *Young v. Michigan Mut. Ins. Co.*, 362 N.W.2d 844, 847 (Mich. Ct. App. 1984) ("There is no implied private cause of action in tort for violation of M.C.L. § 500.2006."). Instead, it is a penalty that is "inseparable from a claim on the [insurance] policy." *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 2017 WL 227958, at *3 (E.D. Mich. Jan. 19, 2017). It thus appears that § 500.2006(4) interest

need not be pled substantively in an action, such as this one, that arises from an unpaid insurance claim. Moreover, the Michigan Court of Appeals has explicitly stated: "The omission of a requirement for the claimant to specially plead entitlement to the penalty is consistent with the general principles that there is no private cause of action under MCL 500.6002, and the purpose of the statute is to penalize dilatory insurers rather than to compensate claimants." *Hastings Mut. Ins. Co.*, 2013 WL 1149790, at *19, *vacated on other grounds*, 838 N.W.2d 874. As a result, the Court rejects Defendant's argument that § 500.2006(4) interest needs to be pled to be recovered.

Even if § 500.2006(4) interest needed to be specifically pled, Plaintiff could recover such interest under Federal Rule of Civil Procedure 54(c). Rule 54(c) provides that any final judgment other than default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). According to the Sixth Circuit, "[t]his rule affords district courts flexibility in crafting relief so that a plaintiff may recover on a valid claim, regardless of counsel's pleading errors." *Yoder v. Univ. of Louisville*, 417 F. App'x 529, 530 (6th Cir. 2011) (citing *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983)). But this flexibility is not without limitations: "[A] plaintiff may obtain relief on an unpleaded theory of recovery only if [1] he proves that theory, [2] he bases it on the wrongful act alleged in the complaint, and [3] the defendant receives fair notice of the theory." *Yoder*, 417 F. App'x at 530 (citing *Bluegrass Ctr., LLC v. U.S. Intec, Inc.*, 49 F. App'x 25, 31 (6th Cir. 2002)). In other words, "[t]he relief need not have been tried by consent, but the only caveat is that the opposing party must have had notice so as not to be prejudiced." *Versatile Helicopters, Inc. v. City of Columbus, Ohio*, 548 F. App'x 337, 343 (6th Cir. 2013) (citation omitted); *see*

*also In re Fasano/Harriss Pie Co.*, 848 F.2d 190 (Table) (6th Cir. 1988) ("[S]o long as the plaintiffs' proof justifies the relief which is ultimately granted, and the defendant is not thereby prejudiced, Rule 54(c) permits the court to grant relief not specifically requested.") (internal citations omitted).

Here, all three requirements for relief under Rule 54(c) are met. First, the record contains sufficient proof that Defendant received satisfactory proof of loss and then failed to pay, as the Court discussed above. Second, Plaintiff's request for penalty interest arises out of the wrongdoing alleged in the Amended Complaint, namely Defendant's failure to pay an insurance claim. Third, Defendant has received fair notice of Plaintiff's theory, as discussed above. Therefore, even if Plaintiff's failure to plead § 500.2006(4) interest might otherwise preclude its recovery, Rule 54(c) would permit its recovery in this case. *Yoder*, 417 F. App'x at 530.

### 4. Plaintiff Has Not Waived Its Right to Pursue Penalty Interest

Defendant's final argument against an award of penalty interest is based on a theory of waiver. Under Michigan law, waiver involves "a voluntary and intentional abandonment of a known right." *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 725 (6th Cir. 2006) (quoting *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003)); *see also CSX Transp., Inc. v. Benore*, 154 F. Supp. 3d 541, 554-55 (E.D. Mich. 2015) (no "implied waiver" of a defense where party did not engage in "decisive unequivocal conduct" indicating intent to waive). The Court finds no waiver here.

Defendant argues that Plaintiff waived its right to pursue penalty interest because Plaintiff did not seek penalty interest before this Court's December 2013 judgment. But Plaintiff's contention is that its entitlement to penalty interest arose five months later, in May

2014, so Defendant's argument misses the mark.  For the same reason, Plaintiff's failure to seek penalty interest before this Court's March 2014 Amended Judgment is also immaterial.  Under Plaintiff's theory, the stipulation incorporated in that Amended Judgment *is* the proof of loss that forms the basis of its demand for penalty interest, so Plaintiff would have had no reason to seek penalty interest in March 2014.  And, as to Defendant's argument that Plaintiff's failure to plead penalty interest amounts to waiver, this Court has already found that Plaintiff can recover § 500.2006(4) interest without pleading it.

Outside of those untenable arguments, Defendant has not supplied or pinpointed any evidence indicating that Plaintiff engaged in decisive, unequivocal conduct suggesting that it would never seek penalty interest.  Therefore, the Court rejects Defendant's final argument against an award of penalty interest and OVERRULES Defendant's first objection in its entirety.

**B. Whether Prejudgment Interest Ceased Running on October 8, 2015**

Defendant next objects that Plaintiff is not entitled to recover prejudgment interest of any kind after October 8, 2015, the date this Court granted Plaintiff's motion for partial summary judgment on its claim for Time Element Loss.  The parties agree that prejudgment interest accrues until the date that the federal post-judgment interest provisions are triggered.  Under 28 U.S.C. § 1961(a), those provisions are triggered following "the entry of the judgment."  The question for this Court, therefore, is whether the October 8, 2015 decision constitutes a "judgment" for the purposes of this statute.

A review of the relevant precedent begins with the Supreme Court's decision in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990).  There, the jury issued a verdict, and the district court entered a judgment but also held that the damages portion of

the verdict was not supported by the evidence. *Id.* at 830. The district court thus ordered a limited retrial on the issue of damages, which resulted in a second judgment. *Id.* The question for the Supreme Court was which of the judgments triggered the accrual of post-judgment interest. *Id.* at 835. The Court decided that post-judgment interest should be calculated from the second judgment, explaining: "Where the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way." *Id.* at 836.

Since *Kaiser*, the Sixth Circuit has issued several published decisions clarifying when an order constitutes a "judgment" for the purposes of the federal post-judgment interest statute. In *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, the issue was whether post-judgment interest began accruing after (1) an initial judgment awarding damages or (2) a later judgment reducing those damages via remittitur. 954 F.2d 1263, 1274-75 (6th Cir. 1992). The Sixth Circuit decided that the post-judgment interest should run from the initial judgment because the damages "were sufficiently ascertained at the time[.]" *Id.* at 1275. The court explained that "[t]he remittitur merely reduced the damages by a distinct amount easily determined from the facts of the case." *Id.*

Two years later, in *Adkins v. Asbestos Corp., Ltd.*, the competing decisions were: (1) an original judgment that was vacated on appeal because it was not supported with specific findings of fact and conclusions of law; or (2) a later judgment that provided specific calculations of the plaintiffs' injuries and arrived at a different award. 18 F.3d 1349, 1352 (6th Cir. 1994). The Sixth Circuit selected the later judgment because "the damages suffered by the plaintiffs were not meaningfully ascertained as required by [*Kaiser*] until the trial court issued its second judgment." *Id.*

14

Next, in *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, the Sixth Circuit harmonized *Adkins* and *Coal Res.* as follows: "We have applied *Kaiser* to hold that post-judgment interest runs from the date of any judgment that is not entirely set aside." 178 F.3d 414, 429 (6th Cir. 1999). The *Skalka* court reviewed how the "meaningful ascertainment" analyses proceeded in *Kaiser* and *Coal Res.*, but it did not apply the test because the issue there was whether a "partial, non-appealable judgment triggers the accrual of post-judgment interest." *Id.* The *Skalka* court ultimately announced that post-judgment interest may begin running from "the date of entry of [an] initial, partial judgment . . . even though that judgment was not yet appealable." *Id.*

Three years later, in *Caffey v. Unum Life Ins. Co.*, the Sixth Circuit considered which of three judgments triggered the post-judgment interest statute: (1) a first judgment granting summary judgment to the plaintiff on her claim for disability benefits and for prejudgment interest; (2) a second judgment revisiting the prejudgment interest issue because the first judgment "failed to determine the applicable pre-judgment interest rate and the manner in which accrued pre-judgment interest is to be calculated"; and (3) a third judgment amending that award based on a new model for calculating interest. 302 F.3d 576, 587 (6th Cir. 2002). The Sixth Circuit determined that it would calculate post-judgment interest from the date of the first judgment because that judgment's finding that the plaintiff was entitled to prejudgment interest meant that the prejudgment interest award was "sufficiently ascertained." *Id.* at 589. The court explained:

> [T]he quantification of prejudgment interest in the instant case was merely a mathematical function of the court's prior rulings concerning the underlying damage amount and time period for which benefits were due. Although the precise amount of the award fluctuated somewhat as the court modified its method of calculation, these adjustments did not have the same effect as an

15

> order vacating the award in its entirety. Nor does it matter to our analysis
> that the district court's March 2 judgment was not an appealable final order.

*Id.* at 589-90 (internal citations omitted).

In 2005, the Sixth Circuit returned to the post-judgment interest statute in *Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781 (6th Cir. 2005), *abrogated on other grounds by Allied Indus. Scrap, Inc. v. OmniSource Corp.*, 776 F.3d 452, 453 (6th Cir. 2015). The issue there was which of several judgments marked the date when prejudgment interest stopped accruing and post-judgment interest began. *Scotts*, 403 F.3d at 792-93. After rejecting several candidates because "the damages due were not sufficiently ascertained," the court chose a later judgment over an earlier judgment to remedy an "equitable imbalance." *Id.* at 792-93.

In 2012, the Sixth Circuit revisited 28 U.S.C. § 1961 in its most recent published decision on the matter, *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349 (6th Cir. 2012). There, the court held that an opinion that "contained findings relating to the amount of pre-judgment interest that [a later opinion] did not completely vacate" was the "judgment" for the purposes of § 1961(a). *Id.* at 361. Recognizing potential "tension with *Scotts*," the *Stryker* court distinguished the cases as follows: "In *Scotts*, the first mention of pre-judgment interest in the opinions of the district court was the final judgment, not any of the earlier judgments. . . . Here, there is no question that pre-judgment interest was awarded by the district court in the [earlier opinion]." *Id.* at 362.

Against this backdrop, the parties have offered competing tests for this Court to apply. Plaintiff proposes that "the dividing line between pre- and post-judgment interest is the date of the first judgment actually awarding prejudgment interest" (Dkt. 143, at 7), while

16

Defendant lobbies for the "meaningful ascertainment" test. Defendant's position is more persuasive. First, Defendant's test enjoys greater support in the case law. While Plaintiff's position relies on dicta from *Stryker* distinguishing that case from *Scotts*, Defendant's proposal is based on the Supreme Court's ruling in *Kaiser* and Sixth Circuit precedent spanning the past twenty-five years. Second, while the *Stryker* decision did not mention the "meaningful ascertainment" test specifically, it did not expressly abrogate it, either. Furthermore, in a decision issued after *Stryker*, the Sixth Circuit stated: "Since *Kaiser*, the Sixth Circuit has applied the 'meaningful ascertainment [test]' for purposes of determining when post-judgment interest should begin." *Whitesell Corp. v. Whirlpool Corp.*, 496 F. App'x 551, 557 (6th Cir. 2012). While the *Whitesell* decision is unpublished, it supplies strong evidence that the "meaningful ascertainment" test survives in this circuit.

Having determined that the "meaningful ascertainment" test governs this issue, the Court finds that its October 8, 2015 decision constitutes the "judgment" under 28 U.S.C. § 1961. In that decision, this Court awarded Plaintiff $25,093,533 on the issue of Time Element Loss, so the damages were "ascertained in a[] meaningful way." *Kaiser*, 494 U.S. at 836. Since then, the decision has not been "entirely set aside." *Skalka*, 178 F.3d at 429. And this Court sees no "equitable imbalance" requiring redress. *Scotts*, 403 F.3d at 793. "Nor does it matter to our analysis that [the October 8, 2015] judgment was not an appealable final order." *Caffey*, 302 F.3d at 590. Calculating the interest will involve "merely a mathematical function of the court's prior rulings concerning the underlying damage amount and time period for which benefits were due." *Id.* Phrased differently, it will "merely [alter] the damages by a distinct amount easily determined by the facts in the case." *Coal Res.*, 954 F.3d at 1275. Accordingly, the Court concludes that its October 8,

2015 decision marked the date when prejudgment interest stopped running and post-judgment interest began, and Defendant's second objection is SUSTAINED.

## III. Conclusion

For the foregoing reasons, the Court OVERRULES Defendant's first objection and SUSTAINS the second, and it ACCEPTS IN PART and REJECTS IN PART Plaintiff's proposed judgment. In light of the rulings in this opinion and order, the parties should now be capable of agreeing to a judgment conforming to the Court's rulings. The Court accordingly directs the parties to submit a stipulated proposed judgment within seven days of this opinion and order.

SO ORDERED.

    s/Nancy G. Edmunds
    Nancy G. Edmunds
    United States District Judge

Dated: May 25, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2017, by electronic and/or ordinary mail.

    s/Carol J. Bethel
    Case Manager